**TEXTILE WORKERS UNION OF AMERICA, Plaintiff,**

v.

**CONE MILLS CORPORATION, Defendant.**

No. C–63–G–58.

United States District Court
M. D. North Carolina,
Greensboro Division.

Nov. 17, 1960.

Robert S. Cahoon, Greensboro, N. C., for plaintiff.

McLendon, Brim, Holderness & Brooks, Greensboro, N. C., for defendant.

EDWIN M. STANLEY, District Judge.

This is a proceeding to enforce an arbitration award, rendered on September 11, 1957, sustaining grievances made by the plaintiff on behalf of several hundred of its employees.

When the matter was initially before the court, it was concluded that the court was without jurisdiction to grant the relief prayed for in the complaint, and that the action should be dismissed for that reason. Textile Workers Union of America v. Cone Mills Corp., D.C.M.D. N.C.1958, 166 F.Supp. 654. Questions relating to the validity of the award were not reached or discussed, since it was concluded that the court lacked jurisdiction to entertain the case.

Upon review, the Court of Appeals disagreed on the question of jurisdiction, and the decision of this court was reversed and the case remanded for further proceedings. Textile Workers Union of America v. Cone Mills Corp., 4 Cir., 1959, 268 F.2d 920. The United States Supreme Court denied certiorari. Cone Mills Corp. v. Textile Workers Union of America, 361 U.S. 886, 80 S.Ct. 157, 4 L.Ed.2d 121.

Upon remand, the parties stipulated that the case would be submitted, and the rights of the parties determined, by the court as a matter of law, from the pleadings, exhibits attached thereto, and the stipulations. The stipulations provided that in the event the award of the arbitrators should be affirmed, the amount the defendant should pay to each of the employees involved would be determined by stipulation of the parties or, upon their failure to agree, the court should designate a referee to determine said amounts.

### Facts

From the pleadings, exhibits and stipulations, the following facts are found:

1. In November, 1956, the plaintiff, an unincorporated labor organization, entered into written collective bargaining agreements with the defendant, a North Carolina corporation, covering three of the defendant's textile plants in Greensboro and Reidsville, North Carolina.

2. Each of the collective bargaining agreements provided, in pertinent parts, the following:

"Section II—Management

"It is recognized and agreed that the management of the Mill and the direction of the working forces is vested in the Company. Among the rights and responsibilities which shall continue to be vested in the Company, but not intended as a wholly inclusive list of them, shall be: The right to increase or decrease operations; to remove or install machinery; to determine schedules of production, to remove the plants to another location, or close or liquidate the plant; to increase or change production equipment; to introduce new or improved production methods and facilities; to regulate the quality and quantity of production; to relieve employees from duty because of lack of work; to employ, lay-off, re-employ, and transfer employees; to demote, discipline or discharge employees; to determine the qualifications for and make the selection of its managerial and supervisory forces; to determine the qualifications for and to select and hire new employees; and to contract work in its discretion. Except as the exercise of any of the foregoing rights of management is expressly and specifically limited by direct provisions of this Agreement, the Company has the unqualified right to place any or all of such rights into effect without notice to, or negotiation with, the Union."

"Section III—Adjustments of Grievances

"Grievances, disagreements, or disputes arising out of the operation

**730**

or interpretation of this Agreement, including instances where it is contended that an employee or group of employees was disciplined or discharged without proper cause, or concerning wages (other than general increases or decreases in the rate structure, pensions, insurance, vacations, holidays, premium payments or any other monetary benefits), hours of employment, or other conditions of employment, shall be handled and settled in the following manner:"

\* \* \* \* \* \*

"(d) If the matter is not satisfactorily settled by a conference as mentioned in Clause C above, the issue(s) may \* \* \* be submitted to arbitration as provided in Section IV of this Agreement; provided, however, that only grievances, disagreements, complaints or disputes arising out of the operation or interpretation of this contract shall be subject to arbitration \* \* \*. Matters or subjects not specifically incorporated in the terms of this Contract shall not be subject to arbitration, nor shall arbitration be provided for disputes involving those monetary benefits mentioned in the Preamble of this Section (III)."

\* \* \* \* \* \*

"Section IV—Arbitration

"If a satisfactory adjustment is not reached by the other procedure herein, then, and in that event, the issue(s) as above defined may be submitted to arbitration by either party \* \* \*."

\* \* \* \* \* \*

"In all cases, the board of arbitration shall find the facts and render its decision based thereon. The board of arbitration shall have no power to alter, add to, or amend the provisions of this contract in any respect."

\* \* \* \* \* \*

"Section V—Strikes and Lockouts

"(a) Except as permitted by Section X, the Union will not strike or engage in any effort to interfere with the orderly and efficient operation of the Company's plants through a slowdown or any other method, and the Company will not engage in any lockout. \* \* \*"

"Section VIII—Hours of Work, Overtime Pay, Reporting Pay, and Holidays"

\* \* \* \* \* \*

"Nothing herein above shall be construed as guaranteeing any hours, days or weeks of work for the employees, but rather is intended to set forth the time when work commences for the purpose of computing an employee's hours of work."

\* \* \* \* \* \*

"(d) Holidays. Christmas Day shall be observed as a holiday with full pay \* \* \*."

"The following days shall be observed . as holidays without pay: New Year's Day, Easter Monday, July Fourth, Labor Day, and Thanksgiving Day.

"If any of these designated holidays fall on a Sunday, the following Monday shall be observed as the holiday. The Company agrees that one and one-half times the regular rate of pay shall be paid for time worked on any of these holidays. \* \* \*"

"Section XII—Vacations with Pay

"Between June 1 and September 1, 1957, the Company agrees to give a one-week vacation with pay to all employees who shall have worked for the Company during the twelve-month period ending June 1, 1957, and who are on the payroll when the vacation period starts."

"Section XVII—Coverage and Separability"

" \* \* \* the Company and the Union, for the life of this Agree-

ment, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Agreement."

3. The employees of the Company at the three plants involved, namely, White Oak, Proximity, and Edna, were granted a week's vacation with pay in July, 1956.

4. On December 7, 1956, there was posted at the Company's Edna plant a written notice that, "in observance of the Christmas Holidays," the plant would stop work Friday night, December 21, 1956, and would resume operations on Tuesday, January 1, 1957. On December 10, 1956, the Company's Proximity and White Oak plants posted written notices that the plants would close down on Friday, December 21, 1956, "for the Christmas-New Year's vacation period," and that operations would resume on Tuesday, January 1, 1957. The three plants were closed for Christmas week as noticed. Since the paid vacations for the employees prescribed in the agreements had already taken place, they received no compensation during the week in question, except they were paid for Christmas Day as provided for by Section VIII(d) of the collective bargaining agreements.

5. During the early part of January, 1957, the employees at the three plants filed with the Employment Security Commission of North Carolina claims for unemployment compensation benefits for the week they did not work. Compensation was refused by the Commission under Section 96–13 of the North Carolina Employment Security Act, which provides that no person shall be considered available for work for any week, not to exceed two weeks, in any calendar year in which the Commission finds that his unemployment is due to a vacation. The decision of the Commission was affirmed by the North Carolina Supreme Court on January 10, 1958. In re Southern, 1958, 247 N.C. 544, 101 S.E.2d 327. A complete history of the proceedings before the Commission may be found in the opinion of the North Carolina Supreme Court.

6. On January 4, 1957, the Union filed grievances with the White Oak plant claiming that the Company had violated the collective bargaining agreements "by laying the employees off from Dec. 21, 1956 till 1–2–57 and calling it a vacation without pay." On January 9, 1957, the Union filed similar grievances with the Proximity and Edna plants.

7. The foregoing three grievances were heard together before an arbitration panel on January 23, 1957. Evidence was introduced by the parties at the hearing, including the grievance forms, the collective bargaining agreements between the Union and the Company, the denial of compensation by the Employment Security Commission, and the history of past practices of the Company in observing vacations and holidays at the three plants.

8. On September 11, 1957, a majority of the arbitration panel sustained the grievances made by the Union, and ruled that the Company was obligated to make the employees whole for the amount of unemployment benefits which they failed to receive by reason of the Company designating Christmas week as a vacation rather than a layoff. The arbitration proceeding was conducted and the award made without the intervention or supervision of any court. The award of the Board of Arbitration, which was accompanied by an opinion by the chairman, was as follows:

"The grievances are sustained. The Company violated the Contracts at the Edna, Proximity, and White Oak Plants in imposing Christmas holidays and vacations from December 21, 1956, to January 1, 1957, and it is awarded that the Company cease such violations. It

is further awarded that the Company is obligated to make the employees whole such damages as they sustained or shall sustain from such breach, namely, the amount of unemployment benefits which they failed to receive because of such breach. In the event the Supreme Court of North Carolina shall sustain the Superior Court's judgment sustaining the Employment Security Commission's decision, this award shall be conclusive; in the event the Supreme Court of North Carolina shall reverse such judgment, this award shall be held in abeyance pending the final outcome of the litigation.

"By stipulation of the parties at the hearing, the Board retains jurisdiction to settle any disputes which may arise over the exact amounts due each employee."

The representatives chosen by the Company to serve on the arbitration panel dissented from the award and filed a dissenting opinion.

9. The grievances were filed in the manner and within the time provided by the collective bargaining agreements, and the Company makes no contention that all procedural requirements for submitting the grievances to arbitration were not followed. The Company did contend, however, at the outset, that the grievances were not ones that were arbitrable under the collective bargaining agreements.

10. The Company refused to comply with the arbitration award, and this suit was brought to have the court enforce the award.

### Discussion

■ The question for determination is whether the award should be affirmed and enforced, or should be vacated and set aside as invalid. In making this determination, we are directed to apply federal substantive law "fashioned from the policy of our national labor law." Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 918, 923, 1 L.Ed.2d 972; Textile Workers Union of America v. Cone Mills Corp., 4 Cir., 1959, 268 F.2d 920.

We must start from the premise that this action is based on breach of contract between the parties. The Union contends that in declaring a vacation in December the Company violated its contract for the reason that Section VIII of the collective bargaining agreements covers the entire subject of holidays without giving the company the right to declare additional holidays, and that Section XII of the agreements covers the entire subject of vacations, and fixes the vacation at one week to be taken between the period of June 1 and September 1, and contains no provision giving the Company a right to declare additional vacations outside of that period. As stated by the Chairman of the Board of Arbitration in his opinion, the Union relied "on the legal rule of construction, *expressio unius est exclusio alterius*, to express one thing is to exclude others." On the other hand, the Company strongly urges that the arbitration award should be vacated and set aside as invalid, principally arguing that the grievances were not within the scope of the arbitration sections of the collective bargaining agreements.

In rejecting the contentions of the Company that the grievances were not arbitrable, the Board of Arbitration, in its opinion by the chairman, stated:

"I think this argument goes to the merits rather than to arbitrability. There is drawn in the question not only the proper interpretation of Sections VIII and XII but also of the Management Rights section, and no decision could be rendered without interpreting those sections and applying the facts of the case to them. Such a decision, either that the Company did or did not violate the Contract, is a decision on the merits. The only case not arbitrable is one where the moving party raises no issue of contract violation."

After finding that the Company deliberately and intentionally, in order to

save taxes, declared a vacation or holiday, with full knowledge that such action would deprive the employees of unemployment benefits to which they would be entitled during a layoff, the following observations were made concerning the merits of the grievances:

"I turn now to the question whether such action in declaring a vacation or holidays was a breach of contract. For if it was not, the grievances are not sustainable. The Company has the legal right to save on taxes in any legal way that it can. But, of course, it has no right to violate the contract."

\* \* \* \* \* \*

"Under that section [Section II] there can be no question of the right of the Company to 'close' the plant. It is expressly conferred. But it cannot exercise that right in violation of other provisions of the Contract. \* \* \*"

"So the case really turns upon the question whether Section XII, the vacation section, restricts the Company in the matter of declaring vacations, or Section VIII(d) limits the Company with respect to declaring holidays. \* \* \*"

\* \* \* \* \* \*

"It is obvious, from a reading of this sub-section [Section VIII (d)] that the parties intended to cover the entire subject of holidays. That section gives the employees no right to pay for any holiday other than Christmas; it gives them no right to demand any holiday other than those designated. Likewise it gives the Company no right to designate as holidays any date not mentioned. It is as well settled a principal of contract construction as any I know, that where a contract deals with and purports to cover a particular subject, both parties are limited in their rights concerning that subject by the language written. Section VIII (d) cannot be enlarged by reference to Section II. The general language of Section II is restricted by the specific language of Section VIII; it cannot be held to enlarge that specific language without violating fundamental principles of contract construction. Section VIII lists the holidays; that list cannot be expanded, under the rule referred to above, *expressio unius est exclusio alterius.*"

\* \* \* \* \* \*

"I turn now to a consideration of Section XII. There again, the parties covered an entire subject, this time vacations. They did so in considerable detail, specifying the vacation period as June 1 to September 1, providing for the method of pay, providing the rules for eligibility, reserving certain rights to the Company with respect to keeping production going, requiring employees to work, etc. Nowhere in that section is there a reservation of a right to declare additional vacations, either with pay or without. The only vacation expressly provided for there is a vacation of one week with pay. There is no express provision for a vacation at any time without pay. If the parties had desired to provide for a second unpaid period after the week provided for, they could easily have done so, just as they provided for unpaid holidays in Section VIII. Not having done so, there is no right in the employees to demand an additional and unpaid vacation, or in the Company to impose one."

On June 20, 1960, the United States Supreme Court rendered three significant decisions [1] relating to the enforcement of arbitration provisions and awards under collective bargaining

1. United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S. Ct. 1343, 1363, 4 L.Ed.2d 1403, 1432; United Steelworkers of America v. Warrior & Gulf Nav. Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424.

734

agreements, and these decisions are clearly dispositive of the issues involved in this case.

In the Warrior case, 363 U.S. at pages 581–583, 80 S.Ct. at page 1352 it is stated:

"The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts. *The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.* The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is

a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. *An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.* (Emphasis supplied).

\*  \*  \*  \*  \*  \*

"The judiciary sits in these cases to bring into operation an arbitral process which substitutes a regime of peaceful settlement for the older regime of industrial conflict. Whether contracting-out in the present case violated the agreement is the question. It is a question for the arbiter, not the courts."

Again, in the American case, 363 U.S. at page 569, 80 S.Ct. at page 1347, the court stated:

"The union claimed in this case that the company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement. Arbitration should have been ordered. When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal."

Further, in the Enterprise case, 363 U.S. at pages 596–599, 80 S.Ct. at page 1360, it is stated:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. * * *

· "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

" * * * A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. * * *

" * * * Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator's decision was not based upon the contract. The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final * * * *It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.*" (Emphasis supplied.)

The Company correctly asserts that the Warrior and Enterprise cases are authority for the proposition that the courts are assigned the duty of determining whether the reluctant party has breached his promise to arbitrate, and that the award of the arbitrator is valid only so long as it draws its essence from the collective bargaining agreement signed by the parties. The Company then earnestly argues that the collective bargaining agreements in question exclude from arbitration all matters and subjects not specifically referred to or covered by the contract; that the Company reserved the right to direct its working forces; that there is no prohibition in the agreements against declaring as many holidays or vacations as the Company might deem wise; that while the agreements provided for one holiday with full pay, and for five holidays without pay, the Company is nowhere prohibited from observing more than these named holidays; that there are no provisions in the agreements which prohibit the closing of the plants during Christmas week, and nothing which either directly or indirectly limits the right of

the Company to take the action which it did; and that under these circumstances, since the award of the arbitrators did not draw its essence from the collective bargaining agreements, the award is void and unenforceable.

■ This argument, it must be conceded, is persuasive, and perhaps could have been sustained by the controlling authorities prior to the decisions of the Supreme Court in the Warrior, American, and Enterprise cases. But these decisions, as we have seen, clearly hold that the labor arbitrator's source of law is "not confined to the express provisions of the contract" [363 U.S. 574, 80 S.Ct. 1356]; that judicial inquiry must be limited to whether the reluctant party agreed to arbitrate the dispute; that a dispute must be held to be arbitrable unless it can be said with "positive assurance" that it is excluded by the contract; and that doubts are to be resolved in favor of arbitration. See the dissenting opinion of Mr. Justice Whittaker in the Warrior case. These cases further teach that courts should refuse to review the merits of an arbitration award, and that ambiguity in the opinion of the arbitrator is no reason for refusing to enforce the award. Additionally, it is held in the Enterprise case that courts have no business overruling the arbitrator because they place a different construction on the contract from that of the arbitrator.

The original and supplemental briefs filed by the Company have been carefully read and mature consideration has been given to all contentions made and authorities cited, but no useful purpose would be served by a further discussion and analysis of these contentions and authorities. As earlier noted, it is the view of this court that the three cases decided by the United States Supreme Court earlier this year clearly require a rejection of all defenses asserted by the Company.

Since it cannot be said with "positive assurance" that the collective bargaining agreements in question were not susceptible to the interpretation placed upon them by the arbitrators, and since the merit of the award is not subject to judicial review, it is concluded that the award is valid.

### Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter.

2. The plaintiff is entitled to an order affirming and enforcing the arbitration award.

Counsel for the plaintiff will prepare and submit to the court, after exhibiting it to counsel for the defendant for approval as to form, an order in conformity with this opinion.