286 F.2d 329
 INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, Appellant,
v.
LOCAL 400, PROFESSIONAL, TECHNICAL AND SALARIED DIVISION, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL-CIO.
 No. 13236.
 United States Court of Appeals Third Circuit.
 Argued November 18, 1960.
 Decided December 20, 1960.
 As Amended January 16, 1961.
 
 Matthew E. Murray, Chicago, Ill. (John R. Kelly, Tenafly, N. J., Edward J. Gilhooly, Gilhooly, Yauch & Fagan, Newark, N. J., Matthew E. Murray, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., on the brief), for plaintiff-appellant, International Telephone & Telegraph Corp.
 Sidney Reitman, Newark, N. J. (Kapelsohn, Lerner, Leuchter & Reitman, Newark, N. J., on the brief), for appellee.
 Before GOODRICH, KALODNER and STALEY, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 This appeal involves the question of the arbitrability, under the terms of a collective bargaining agreement, of a dispute that has arisen between the ITT Laboratories ("company"), a division of International Telephone and Telegraph Corporation, appellant, and Local 400, Professional, Technical and Salaried Division, International Union of Electrical, Radio and Machine Workers, AFL-CIO ("union").
 
 
 2
 The company became prime contractor under a contract entered into in 1958 with the United States whereby it agreed to design, construct, install and maintain certain electronic equipment. It proceeded to design and construct the equipment in its laboratories and subcontracted with a subsidiary, Federal Electric Corporation ("FEC"), which agreed to perform the installation and maintenance work called for by the prime contract. In 1959, certain FEC technicians were assigned to work in the company's production laboratories so that they could become familiar with and trained in the peculiarities and workings of the equipment which they were to install and maintain under the subcontract. Though paid by FEC, these technicians while in the company's laboratories worked side by side under common supervision with regular company technicians in helping to produce the equipment called for by the prime contract.
 
 
 3
 The union, as the exclusive bargaining representative for company technicians, took the position that the use of FEC technicians in the production laboratories, under the circumstances, constituted a violation of the agreement. It thereupon unsuccessfully filed a grievance and subsequently requested arbitration. The company, maintaining that the matter was not arbitrable, instituted an action for declaratory judgment to determine that question. The trial court found that the dispute was arbitrable under the agreement and entered judgment dismissing the complaint.[1]
 
 
 4
 Three decisions handed down by the Supreme Court on June 20, 1960,[2] and two subsequent ink-fresh decisions filed by this court on October 7, 1960,[3] are dispositive of this appeal.[4] These decisions make it abundantly clear that the judicial function is narrowly circumscribed in cases such as this where the parties have agreed to submit to arbitration disputes arising under their collective bargaining agreement. That function is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is one governed by the agreement. A court cannot pass on the merits of the claim. That is the arbitrator's function. Not only is the law clear, but its application to the controlling facts here is facilitated by the guidance contained in United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 584-585, 80 S.Ct. 1347, 1354, where Justice Douglas said: "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."
 
 
 5
 Here, the agreement contains a no-strike clause, together with a broad arbitration clause whereby "The Union, desiring to submit a matter to arbitration shall notify the Company in writing within the * * * thirty day period."[5] Under this provision, any dispute between the company and the union requiring the interpretation and application of the agreement is a "matter," as that term is used in the arbitration clause, subject to arbitration. We are fortified in arriving at this conclusion by the fact that the agreement itself specifically excepts from the reach of the arbitration clause disputes in certain areas not even remotely related to that which is asserted here.[6] Thus, we have here clear and unambiguous exceptions to an otherwise sweeping arbitration clause.
 
 
 6
 The company's position appears to be that the decision to import FEC technicians into its laboratories constituted an exercise of managerial prerogatives in that it was merely a phase of subcontracting, which, it maintains, it has a right to do under the provisions of the agreement.[7] On the other hand, the union contends that the action taken by the company, whether it involves these matters or not, violates other specific provisions of the agreement and that disputes arising by virtue of such violations were not expressly excluded from the sweep of the arbitration clause.[8]
 
 
 7
 To so state the contentions advanced by the parties, framed in the law previously stated, is to dispose of this appeal. Even a cursory examination makes it lucidly clear that they give rise to a dispute which on its face is governed by and necessitates an interpretation and application of the agreement. Whether the company has violated the specific provisions of the agreement that the union called to our attention necessitates a factual determination and an application of the agreement as interpreted. Is the company correct when it says that it has an explicit and unconditional right under the agreement to subcontract for the use of FEC technicians in regular production and that it cannot, therefore, be guilty of violating any provision of the agreement by exercising such a right? Certainly, the most that can be said for the company is that the provisions referred to us are not clear in this regard. These and other questions may be pressed before the arbitrator, but under the recent mandate of the Supreme Court we have no authority to pass upon them.
 
 
 8
 On appeal the company urges, for the first time in this litigation, that three additional reasons exist to support their position that the dispute here is not subject to arbitration.[9] First, no injury or harm has been suffered by any union member that could be attributable to the use of FEC technicians; only individual employees or a group of employees, and not the union as was done here, can file a grievance; and lastly, the grievance was not timely filed.[10] Our answer is that all of these matters require for their resolution an interpretation and application of the agreement by the arbitrator. Only as an illustration, we point to the fact that under the arbitration clause the union may request arbitration.[11]
 
 
 9
 The judgment of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 International Telephone and Telegraph Corp. v. Local 400, Civil Action No. 119-60 (D.N.J.), an unreported opinion filed May 3, 1960
 
 
 [2]
 United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; and United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424
 
 
 [3]
 Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 3 Cir., 1960, 283 F.2d 93; and International Molders & Foundry Workers Union v. Susquehanna Casting Co., 3 Cir., 1960, 283 F.2d 80
 
 
 [4]
 The decisions of the Supreme Court handed down on June 20, 1960, have been applied to a variety of facts in various recent decisions. See Local 201, International Union of Electrical, Radio and Machine Workers, AFL-CIO v. General Electric Co., 1 Cir., 1960, 283 F.2d 147; Textile Workers Union of America v. Cone Mills Corp., D.C.M.D.N.C.1960, 188 F.Supp. 728; Maryland Telephone Union v. Chesapeake & Potomac Telephone Co., D.C.D.Md.1960, 187 F.Supp. 101; Local 725, International Union of Operating Engineers v. Standard Oil Co., D.C.D. N.D.1960, 186 F.Supp. 895; Retail Shoe & Textile Salesmen's Union, Local 410 v. Sears, Roebuck & Co., D.C.N.D.Cal. 1960, 185 F.Supp. 558; United Saw, File & Steel Products Workers of America, Local 22254 v. H. K. Porter Co., D.C. E.D.Pa.1960, 190 F.Supp. 407; Volunteer Electric Cooperative v. J. F. Gann, Tenn.App.1960
 
 
 [5]
 Article XVI, Section 1
 
 
 [6]
 Three provisions in the agreement contain exceptions to the arbitration clause: Article IV, Section 1B; Article X, Section 3(h); and Article XII, Section 12
 
 
 [7]
 In this regard, the company refers us to two provisions in the collective bargaining agreement which in whole or relevant part read as follows:
 "Article XVIII, Management. Subject to the provisions of this Agreement, the management of the Company and the direction of the working force, including the right to hire, promote, transfer, suspend or discharge employees, and the right to lay off employees because of lack of work or other legitimate reason, is vested exclusively in the Company; but such rights shall not be employed for purposes of discrimination against the employee because of bona fide activities on behalf of the Union or because of race, creed, color, sex, national origin or political belief."
 "Article X, Separations, Layoffs and Rehires. * * *
 "Section 3. If it should become necessary because of lack of work to reduce the working force, the following procedure shall be followed, except that in the event the layoff affects less than 5% of the employees in any job group, steps (b) through (f) may be omitted provided that if 5% is less than one the number shall be one:
 * * * * *
 "(b) All work being performed by sub-contractors shall be returned to the group or department affected, if practicable."
 
 
 [8]
 More specifically, the union contends that in using FEC technicians for regular production, the company has breached various provisions of the agreement, including those dealing with classification and pay rates, promotion and upgrading, distribution of overtime work, payment of certain fringe benefits, as well as certain so-called institutional provisions relevant to union recognition, union membership, giving of notice to the union of any change in employee status, and the existence of vacancies covered by the agreement so that the union might refer qualified applicants for consideration, which the company has an absolute right to reject
 
 
 [9]
 Normally a controlling question or issue not presented or passed on below cannot be pressed by an appellant before us. In re Linda Coal & Supply Co., 3 Cir., 1958, 255 F.2d 653; Gilby v. Travelers Insurance Co., 8 Cir., 1957, 248 F.2d 794; and Green v. Dingman, 8 Cir., 1956, 234 F.2d 547. This salutary procedural rule does much to expedite review, for it makes available to an appellate court a resolution of factual questions and the opinion of the lower court. Where none of these are necessary to our review and more importantly where, as here, the issues raised for the first time on appeal can be disposed of summarily by our finding that they are matters for another forum thereby making it unnecessary for us to pass on the merits, we can perceive of no sound reason for strictly limiting our review
 
 
 [10]
 Article XV, Grievance Procedure, Section 1, reads as follows:
 "If an employee or group of employees shall have a grievance, it must be presented within twenty working days of the occurrence of the alleged grievance except that grievances concerning wages may be raised at any time. However, liability on the part of the Company shall not exceed thirty days prior to the raising of the grievance by the Union * *."
 
 
 [11]
 Article XVI, Arbitration, Section 1