## INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION

v.

## LOCAL 400, PROFESSIONAL, TECHNICAL AND SALARIED DIVISION, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Appellant.

No. 13434.

United States Court of Appeals Third Circuit.

Argued May 1, 1961.

Decided May 19, 1961.

———◆———

Sidney Reitman, Newark, N. J. (Kapelsohn, Lerner, Leuchter & Reitman, Newark, N. J., on the brief), for defendant-appellant.

Walter P. Loomis, Jr., Chicago, Ill. (James E. Fagan, Yauch & Fagan, Newark, N. J., Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., on the brief), for plaintiff-appellee.

Before GOODRICH, STALEY and FORMAN, Circuit Judges.

STALEY, Circuit Judge.

This appeal involves the question of the arbitrability, under the terms of a collective bargaining agreement, of a dispute that has arisen between the ITT Laboratories ("company"), a division of the International Telephone and Telegraph Corporation, appellee, and Local 400, Professional, Technical and Salaried Division, International Union of Electrical, Radio and Machine Workers, AFL-CIO, the appellant ("union").

In the latter part of 1959, the company requested four of its employees, who are also members of the union, to apply for voluntary retirement under pension plans then in effect. Upon their refusal to do so, the company terminated their employment and began making pension payments.

The union took the position that such terminations of employment constituted violations of the collective bargaining agreement. Thereafter, it unsuccessfully filed a grievance and then requested arbitration. The company, maintaining that the matter was not arbitrable, instituted an action for declaratory judgment in the district court, where arbitration was refused. D.C.D.N.J.1960, 184 F.Supp. 866.

Three decisions handed down by the Supreme Court in 1960,[1] followed soon thereafter by two opinions authored by Judge Goodrich for this court,[2] formed the basis for our holding in International Telephone and Telegraph Corp. v. Local 400, 3 Cir., 1960, 286 F.2d 329, 330–331, where, in summing up the role of the federal judiciary in disputes arising under labor contracts containing arbitration clauses, we said:

"  *  *  *  These decisions make it abundantly clear that the judicial function is narrowly circumscribed in cases such as this where the parties have agreed to submit to arbitration disputes arising under their collective bargaining agreement. That function is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is one governed by the agreement. A court cannot pass on

1. United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

2. International Molders and Foundry Workers Union, etc. v. Susquehanna Casting Co., 3 Cir., 1960, 283 F.2d 80; Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 3 Cir., 1960, 283 F.2d 93.

the merits of the claim. That is the arbitrator's function."

The union contends that the so-called retirement of the four employees constituted in effect a discharge which Article XIV [3] of the agreement prohibits except in those cases where an employee's conduct or performance prove to be unsatisfactory. The company's answer to that is that Article XIV can only be invoked where an employee is discharged allegedly because of "unsatisfactory performance or conduct," and not where he is retired under a pension plan, and that in any event, it has an absolute and unconditional right to discharge employees under Article XVIII [4] of the agreement, absent a specific provision in that agreement to the contrary.

In recent but unrelated litigation between the company and the union, this court in International Telephone and Telegraph Corp. v. Local 400, 3 Cir., 286 F.2d 329, 331, in referring to an arbitration and no-strike clause identical to that before us, said:

"Here, the agreement contains a no-strike clause, together with a broad arbitration clause whereby 'The Union, desiring to submit a matter to arbitration shall notify the Company in writing within the * * * thirty day period.' Under this provision, any dispute between the company and the union requiring the interpretation and application of the agreement is a 'matter,' as that term is used in the arbitration clause, subject to arbitration. We are fortified in arriving at this conclusion by the fact that the agreement itself specifically exempts from the reach of the clause disputes in certain areas not even remotely related to that which is asserted here. Thus, we have here clear and unambiguous exceptions to an otherwise sweeping arbitration clause."

It is indubitably clear that the dispute between the parties is subject to arbitration. Even a passing examination of their contentions establishes the existence of a dispute which on its face is governed by and necessitates an interpretation and application of the agreement. Whether the company has the right to unilaterally retire an employee once he reaches the age of 65 will require an interpretation and application of the various provisions in the agreement relied on by the union and the company. Is the company correct when it asserts that it has an unqualified right to terminate employment under the "management rights" clause except where the agreement provides to the contrary? These

3. Article XIV reads as follows:
"Section 1. Discharge of employees for unsatisfactory conduct or performance shall be effected in accordance with the warning procedure set forth below:
"(a) A written notice concerning his deficiency shall be given to the employee concerned.
"(b) If there is no improvement within a reasonable time, the employee shall be given a second written warning notice and will be allowed a sufficient opportunity to improve.
"(c) A copy of each warning notice shall be given to the Union.
"(d) No employee may be discharged based upon two successive written warnings when the interim between the warnings exceeds three months.
"Section 2. The Company shall discuss with the Union the contemplated discharge of an employee before the discharge takes place.

"Section 3. No warning need be given to an employee in the case of discharge for good and sufficient cause requiring summary action. The Union shall be notified immediately of any such discharge."

4. Article XVIII, the so-called "management rights" clause, reads as follows:
"Subject to the provisions of this Agreement, the management of the Company and the direction of the working force, including the right to hire, promote, transfer, suspend or discharge employees, and the right to lay off employees because of lack of work or other legitimate reason, is vested exclusively in the Company; but such rights shall not be employed for purposes of discrimination against the employee because of bona fide activities on behalf of the Union or because of race, creed, color, sex, national origin or political belief."

and other questions may be pressed before the arbitrator, but certainly they are beyond our jurisdiction.

We have examined the other contentions pressed and find them without merit.

The judgment of the district court will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.