**BEDFORD PRINTING SPECIALTIES AND PAPER PRODUCTS UNION NO. 716**

v.

**The STANDARD REGISTER COMPANY, a corporation.**

Civ. No. 74-568.

United States District Court, M. D. Pennsylvania.

Dec. 17, 1974.

Jerome H. Gerber, Handler, Gerber & Weinstock, Harrisburg, Pa., John S. McLellan, Kingsport, Tenn., for plaintiff.

J. Thomas Menaker, McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, District Judge.

This dispute concerns whether, under a collective bargaining agreement, an employer is obligated to submit a grievance to arbitration where the Union had previously withdrawn the same grievance. Plaintiff Union has filed a motion for summary judgment while defendant employer has submitted a motion to dismiss or, in the alternative, for summary judgment.

It appears from the pleadings and affidavits filed that in early June, 1970, Mrs. Bonnie Oberle took a sick leave of absence under Article X, § 2 of the 1969 Agreement, contending that she had been disabled by a back injury which she believed she incurred as a result of her job as a bindery operator. When her 26-week leave expired, Mrs. Oberle was discharged and she filed a grievance on December 4, 1970. The grievance was denied by the employer on December 8, 1970. After a meeting of the joint standing committee, as provided for under the contract, the Union representatives, on February 17, 1971, agreed to notify the employer within seven days if they planned to carry the grievance to the next step. The Union decided not to proceed further with the grievance and so notified the employer. More than two years later, July 18, 1973, at a time when a new collective bargaining contract was in effect, the Union resubmitted the Oberle grievance but the Company refused to entertain it. This action followed.

In the affidavits supplied to the Court, both parties present conflicting versions relative to the failure to pursue the original grievance. The Union contends that it believed that Mrs. Oberle's entitlement to an additional leave of absence depended upon a determination by the Pennsylvania Workmen's Compensation Board, or an admission by the Company, that she had incurred a "compensable injury".[1] Further, that on February 23, 1971, the Union President informed the defendant that it would hold the grievance in abeyance until the Company's Workmen's Compensation liability could be established. According to plaintiff, it wasn't until June 14, 1973, that the Company's insurance carrier acknowledged liability and made certain payments to Mrs. Oberle. The matter, consequently, became ripe for arbitration and the grievance was filed. The employer disputes this version contending that the Union representatives and the plaintiff never challenged the ripeness of the controversy and never asked that it be held in abeyance. The initial question before the Court is whether the parties are obligated under the contract to submit the discharge issue to arbitration.

Article VIII of the Collective Bargaining Agreement provides:

"The intent of the parties of this Agreement is that the procedure hereinafter set forth shall serve as the *sole* means of peaceful settlement of *all disputes* that may arise between the parties as to the interpretation, meaning of, or application of the provisions of this agreement." (emphasis supplied)

The Agreement provides further in Article X that "(i)n compensable injury and legal occupational disease cases, sick leave will be granted automatically and

---

1. In her affidavit, Mrs. Oberle stated that the Company said it would not proceed to arbitrate her grievance until her Workmen's Compensation case was decided.

seniority will accumulate for the full period of legal temporary disability." It is this Article that plaintiff seeks to arbitrate.

Any analysis of the issues here must start with the strong language of United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), where it was stated

"For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. *An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.*" (emphasis supplied)

■ It cannot be disputed that the grievance concerning whether Mrs. Oberle has sustained a compensable injury for which sick leave will be granted automatically during the full period of temporary disability is a proper one for arbitration under this contract.

The next question, however, is who is to decide whether plaintiff is now precluded from requesting arbitration because a prior submission was withdrawn.[2] Defendant argues that the Union is not entitled to arbitration because it failed to comply with the contractual conditions precedent to arbitration. Apparently, the failure to pursue

the original grievance in a timely manner and, because of the lapse of time, the failure to file the new grievance within two days of its occurrence, are the conditions precedent to which defendant refers.[3] But plaintiff maintains that its forbearance was justified because a "compensable injury" could not be established until the Workmen's Compensation Board so ruled and, indeed, the company demanded it. But regardless of the merits of this contention, who is to decide whether the delay or original withdrawal relieves defendant of its normal duty to arbitrate? In John Wiley & Sons v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L. Ed.2d 898 (1964), the United States Supreme Court reasoned, as follows:

"Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, *'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.*" (Emphasis supplied)

The opinion pointed out that "(d)oubt whether grievance procedures or some part of them apply to a particular dispute, *whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate* cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration." (Emphasis supplied) More recently in International Union of Operating Engineers, Local 150, AFL–CIO v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), where a grievance was filed for the first time nearly three years after the alleged breach, the Court held that an agreement to submit "any difference" to arbitration was broad enough to encompass the issue of laches.

"That clause applies to 'any difference,' whatever it may be, not settled

2. Although a new contract has come into being since the grievance arose, the pertinent provisions continued without change into the present agreement.

3. The contract provides that the grievance be placed in the grievance procedure within two working days of the discharge.

by the parties within 48 hours of occurrence. There is nothing to limit the sweep of this language or to except any dispute or class of disputes from arbitration. In that circumstance, *we must conclude that the parties meant what they said—that 'any difference,' which would include the issue of laches raised by respondent at trial, should be referred to the arbitrator for decision."* (Emphasis supplied) id. at 491, 92 S.Ct. at 1712.

Perhaps of even greater pertinence to the issue at hand is the language of our Court of Appeals in RCA v. Association of Professional Engineering Personnel, 291 F.2d 105, 110 (3rd Cir. 1961), stating

"The one other point requiring comment is the contention of RCA that under the provisions of the contract, the present grievance is not timely. This court has ruled very recently that such a question is itself a matter of contract interpretation for decision by the arbitrator. International Tel. & Tel. Corp. v. Local 400, supra [3 Cir., 286 F.2d 329]. We adhere to that position." RCA v. Assn. of Professional Engineering Personnel, 291 F.2d 105, 110 (3rd Cir. 1961).

■ Here the contract stipulates that the arbitration process shall be the *sole* means of peaceful settlement of *all disputes.* The parties are disputing the facts behind the withdrawal of the original grievance and whether or not such withdrawal bars subsequent submission. The parties bargained for the arbitrator's construction and so far as the arbitrator's decision concerns construction of the contract, the Courts would have no business overruling him because their interpretation of the contract is different from his. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ If laches and timely filing are appropriate issues for referral to an arbitrator, then the effect of withdrawal of a prior grievance on a party's rights under the contract, and particularly under the grievance procedure, is similarly appropriate. Plaintiff's motion will be granted and the parties ordered to resort to the arbitration procedure provided for in the contract. Defendant's motions will be denied.

Plaintiff's motion for counsel fees will be denied.