376 F.2d 711
 Arthur T. GALT and Maywood Park Trotting Association, Inc., an Illinois corporation, Plaintiffs,
v.
LIBBEY-OWENS-FORD GLASS COMPANY, an Ohio corporation, and F. H. Sparks Co., Inc., a New York corporation, Defendants.
The GEORGE SOLLITT CONSTRUCTION COMPANY, an Illinois corporation, Intervening Plaintiff-Appellee,
v.
F. H. SPARKS CO., Inc., a New York corporation, Defendant-Appellant.
 No. 16024.
 United States Court of Appeals Seventh Circuit.
 April 26, 1967.
 
 Francis X. Conway, New York City, for F. H. Sparks Co.; Wm. Bruce Hoff, Jr., George V. Bobrinskoy, Jr., Chicago, Ill., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., Epstein & Conway, New York City, of counsel.
 Edward H. Hatton, Robert L. Bombaugh, Jonathan T. Howe, Chicago, Ill., Raymond, Mayer, Jenner & Block, Chicago, Ill., of counsel, for intervening plaintiff-appellee.
 Before HASTINGS, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 In this diversity action, the plaintiffs sued to recover for damages occasioned by massive glass breakage at the Maywood Park racetrack in Maywood, Illinois. In 1964, plaintiffs decided to construct a new spectator building for viewing harness racing. The south side of the building was to be enclosed with glass. The plaintiffs created the Arthur T. Galt Building Trust ("Building Trust") to arrange for the construction of the new building, and Lionel K. Levy, a New York, N. Y., architect, was engaged to draw the plans. The George K. Sollitt Construction Company ("Sollitt") of Chicago was chosen as the general contractor.
 
 
 2
 Defendant F. H. Sparks Co., Inc., ("Sparks") of New York was licensed by Glasbau Heinrich Hahn in the "suspended glazing" method of hanging curtain walls of glass without the usual metal framing supports. Plaintiffs authorized Levy to use the Sparks suspended glazing method at Maywood Park. Sollitt thereupon entered into a subcontract with Sparks for suspended glazing with glass manufactured by Libbey-Owens-Ford Glass Company ("LOF"). Article 21 of the subcontract provided that Sollitt and Sparks would be bound by the American Institute of Architects' provisions for arbitration of disputes. In pertinent part, those provisions are:
 
 
 3
 "All disputes, claims or questions subject to arbitration under the Contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects,[1] and the Agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other."
 
 
 4
 According to the complaint, the suspended glazing installed by Sparks was unsatisfactory, with much of the glass cracking and breaking. Another company was employed by plaintiffs to remove the suspended glazing and install conventional glazing.
 
 
 5
 On May 31, 1966, Sparks commenced arbitration proceedings against Sollitt to recover $246,856, allegedly representing the unpaid balance on the subcontract and for extra work performed thereunder. Sparks and Sollitt each designated an arbitrator, and a third arbitrator was selected from a panel submitted by the American Arbitration Association. By stipulation, Sparks and Sollitt fixed the compensation of the third arbitrator. So far, Sparks has expended $1,943.71 in arbitration costs. Sollitt filed an answer in the arbitration proceedings, and its attorneys were permitted to examine Sparks' records in New York in order to expedite the arbitration hearings which were scheduled to commence in Chicago on October 18, 1966.
 
 
 6
 In July 1966, Sollitt was considering the possibility of bringing the Building Trust into the arbitration proceedings, and Sparks suggested that "this be done immediately" if at all. However, neither the Building Trust nor plaintiffs have participated in the arbitration, even though Sollitt's counsel admitted at the oral argument that Sollitt could have "impleaded" at least the Building Trust.
 
 
 7
 On September 29, 1966, plaintiffs filed their complaint against LOF and Sparks. The first six counts sounded in tort. The seventh count sought to enjoin the arbitration proceedings brought by Sparks against Sollitt. On December 8, 1966, the District Court denied plaintiffs' motion for a temporary injunction to halt the arbitration proceedings. The primary ground for the District Court's ruling was that Sollitt was not a party to the lawsuit. The District Court also ruled that plaintiffs could intervene in the arbitration proceedings to protect their interests.
 
 
 8
 Two weeks later, under Rule 24(b) of the Federal Rules of Civil Procedure, Sollitt moved to intervene in the lawsuit as a party plaintiff, seeking a declaratory judgment that it was not indebted to Sparks and seeking a preliminary injunction restraining Sparks from proceeding with the arbitration proceedings, which had been adjourned to January 9, 1967. The District Court granted Sollitt permissive intervention and also enjoined the arbitration proceedings. The order permitting Sollitt to intervene is not appealable (4 Moore's Federal Practice (2d ed.) 1966 Cum.Supp. p. 40); therefore, this appeal questions only the propriety of the injunction.
 
 
 Applicability of Federal Arbitration Act
 
 
 9
 As seen, the contract between Sparks and Sollitt provides that it "shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction". It is noteworthy that the contract does not refer to any specific arbitration statute. However, Section 2 of the Federal Arbitration Act (9 U.S.C. § 1 et seq.) is sufficiently broad to apply; it provides:
 
 
 10
 "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (9 U.S.C. § 2).
 
 
 11
 In turn, the Act defines commerce as including "commerce among the several States" (9 U.S.C. § 1). Unquestionably, this contract evidencs "a transaction involving commerce" within the meaning of the statute, for Sparks was a New York contractor and came to Illinois to perform the work with glass manufactured by LOF in Toledo, Ohio.[2] Therefore, we proceed to the case law interpreting the Federal Arbitration Act to determine whether the injunction against arbitration was erroneous. If the Federal Arbitration Act were not involved, we would have to look at the Illinois Uniform Arbitration Act as interpreted by the Illinois courts. Butler Products Co. v. Unistrut Corporation, 367 F.2d 733, 735 (7th Cir. 1966).
 
 
 12
 Under the Federal Arbitration Act, the courts have been assigned the limited role of "ascertaining whether the party seeking arbitration is making a claim which on its face is one governed by the agreement". International Telephone and Telegraph Corporation v. Local 400, 286 F.2d 329, 330-331 (3rd Cir. 1961). As Judge Frank put it in Reconstruction Finance Corporation v. Harrisons & Crosfield, 204 F.2d 366, 368, 37 A.L.R.2d 1117 (2d Cir. 1953), certiorari denied, 346 U.S. 854, 74 S.Ct. 69, 98 L. Ed. 368:
 
 
 13
 "the provisions of that [Federal Arbitration] Act — 9 U.S.C. § 4 — * * * make it clear that a federal court, in a suit asking it to compel arbitration, should (except as noted below in discussing laches) deal with no issues except (1) the making of an agreement to arbitrate, and (2) the failure, neglect or refusal of the other party to perform that agreement."
 
 
 14
 The policy of the Federal Arbitration Act is to promote arbitration to accord with the intention of the parties and to ease court congestion. Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2d Cir. 1959), certiorari dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37. All doubts are to be resolved in favor of arbitration. Metro Industrial Painting Corp. v. Terminal Construction, 287 F.2d 382, 385 (2d Cir. 1961). Whenever possible, the courts will use the Federal Arbitration Act to enforce agreements to arbitrate. See Monte v. Southern Delaware County Authority, 321 F.2d 870, 874 (3d Cir. 1963).
 
 
 15
 Here the subcontract between Sollitt and Sparks contained their promise to arbitrate. As in Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 62 F.2d 1004, 1006 (2d Cir. 1933), Sollitt's motion to enjoin the arbitration proceedings was a repudiation of its own promise to arbitrate, giving Sparks an election to put an end to the arbitration clause or to insist upon its performance. Here Sparks has insisted upon performance, and its election must be honored, as Judge Learned Hand ruled in the Krauss case.[3]
 
 
 16
 In addition to the Lawrence and Lummus cases (supra, p. 714 and infra, p. 716), Prima Paint Corporation v. Flood & Conklin Mfg. Co., 360 F.2d 315 (2d Cir. 1966), certiorari granted, 385 U.S. 897, 87 S.Ct. 202, 17 L.Ed.2d 130, holds that court proceedings should be stayed to permit arbitration. These decisions of course militate against the ruling below that arbitration should be stayed to permit subsequent court proceedings to continue. Furthermore, having participated in the arbitration proceedings, Sollitt may have waived any right to stay them. In re Hellenic Lines, Ltd. (Louis Dreyfus Corporation), 372 F.2d 753, 758 (2d Cir. 1967).
 
 
 17
 In an effort to support the preliminary injunction, Sollitt has cited two cases under the Federal Arbitration Act. But in Leesona Corp. v. Cotwool Mfg. Corp., 315 F.2d 538 (4th Cir. 1963), Leesona did not seek arbitration until more than a year after it had commenced an infringement action, whereas Sparks has presented its timely claim only to arbitrators. The effect of the stay in Leesona would not permanently cut off arbitration because Huber, the other party to the arbitration agreement, was not involved in Leesona's infringement suit. Here Sollitt is attempting to proceed against Sparks in this lawsuit. Any judgment against Sparks in the lawsuit would of course be res adjudicata, thus effectively barring the very arbitration to which Sollitt and Sparks had agreed. Finally, the District Court in Leesona was motivated by the view that the determination of the status of a patent is inherently unsuited to arbitration. Leesona Corp. v. Cotwool Mfg. Corp., 204 F.Supp. 141, 143 (W.D. S.C.1962).
 
 
 18
 In Stockwell v. Reynolds & Co., 252 F. Supp. 215 (S.D.N.Y.1965), also relied upon by Sollitt, arbitration of Counts I and IV of the complaint was precluded by the doctrine of Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168. Nevertheless, the District Court granted the defendants' motion that the subject matter of Counts II and III be submitted to arbitration. Arbitration of those Counts was stayed temporarily because arbitration of Counts I and IV was foreclosed by the Wilko case. Here no part of the dispute between Sparks and Sollitt is non-arbitrable. Moreover the Stockwell case held that "Under federal law, arbitration clauses are liberally construed" (252 F. Supp. at p. 220).
 
 
 19
 No statutory ground for a stay of arbitration was advanced by Sollitt (see 9 U.S.C. § 2). Sollitt should not be permitted to circumvent the arbitration contract. We conclude that the preliminary injunction was an unwarranted interference with the arbitration sanctioned by the Federal Act.[4]
 
 
 Applicability of Illinois Arbitration Act
 
 
 20
 If the Federal Arbitration Act is inapplicable to this diversity case for constitutional or other reasons,[5] then the Illinois Uniform Arbitration Act becomes pertinent. Under the Uniform Arbitration Act, as shown by its history, "the problem of judicial interference with the question of arbitrability was intended to be governed by § 2 * * *". Layne-Minnesota Co. v. Regents of University of Minnesota, 266 Minn. 284, 290, 123 N.W.2d 371, 376 (1963). Section 2(b) of the Illinois Act permits a court to stay an arbitration proceeding "on a showing that there is no agreement to arbitrate" (Ill.Rev.Stats.1965, c. 10, § 102(b)). Section 2(d) of the Act provides:
 
 
 21
 "Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay." (Emphasis supplied.)
 
 
 22
 Section 2 was interpreted in School District No. 46, etc. v. Del Bianco, 68 Ill.App.2d 145, 215 N.E.2d 25 (2d Dist. 1966), leave to appeal denied, 33 Ill.2d 628 (1966). There the Court determined that "The sole issue under the Act on the preliminary hearings to compel or stay arbitration, is whether there is an agreement to arbitrate". In a well reasoned opinion, Justice Davis explained that the "provisions of the Act militate against the contention that a party to an arbitration agreement may choose between the judicial or arbitration forum" (68 Ill.App.2d at p. 156, 215 N.E.2d at p. 31). In a diversity action involving arbitration under a State statute, a Federal District Court has the powers of a State Court judge. Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 203, 76 S.Ct. 273, 100 L.Ed. 199. Therefore, the District Court's inquiry under the Illinois Act should have been whether or not there was an agreement to arbitrate. Section 2(d) of the Illinois Act shows that the Legislature contemplated multiplicity of actions. In enacting the Uniform Arbitration Act, the Legislature has not eradicated a chancellor's inherent powers, but the Legislature has determined in Section 2 that it is no longer equitable to enjoin arbitration to prevent multiplicity of actions. Arguments about multiplicity of litigation and circuity of action resembling those advanced here by Sollitt were rejected in Stadel v. Granger Brothers, Inc., 4 Mich.App. 250, 144 N.W.2d 609, 614 (1966), and Knolls Cooperative Section No. 1 v. Hennessy, 3 Misc.2d 220, 150 N.Y.S.2d 713, 716-717 (1966)[6] and unsuccessfully raised in the Del Bianco petition for leave to appeal.
 
 
 23
 Even if it were proper under the Illinois Act to enjoin arbitration to prevent multiplicity, this is not an appropriate case to do so. Here Sparks is not pressing its claim against Sollitt in more than one forum. Sparks has steadfastly sought to arbitrate its claim against Sollitt and is not responsible for the multiplicity or circuity problems asserted by Sollitt. It should be noted too that the arbitration claim against Sollitt is purportedly based on the contract between Sollitt and Sparks, whereas the instant lawsuit sounds in tort. Moreover, the District Court could not completely dispose of this controversy in the present lawsuit, for neither the Building Trust nor architect Levy are parties. Sparks is trying to satisfy its claim only before the arbitrators. Sollitt had agreed to arbitration, and arbitration was commenced more than seven months before the District Court entered its stay order. If upheld, the injunction granted by the District Court would have the effect of wasting the time, money and effort that have already been put into the arbitration. Also, there was no need to enjoin the arbitration in order to protect Sollitt from inconsistent decisions. Concedely Sollitt could have brought the Building Trust into the arbitration proceedings if Sollitt feared that it might otherwise be forced to pay twice.
 
 
 24
 In conclusion, whether the arbitration is governed by the Federal or Illinois Acts, the preliminary injunction must be vacated and the Sparks-Sollitt phase of this lawsuit must be stayed[7] until the completion of arbitration. We of course intimate no views as to the merits of Sparks' claim against Sollitt. Section 2(e) of the Illinois Act expressly reserves such questions for the arbitrators. See also Sections 3 and 4 of the Federal Arbitration Act (9 U.S.C. §§ 3 and 4).
 
 
 25
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 An explanatory note to the Standard Form states that upon request, "information on the Federal and on the various State arbitration laws" will be furnished by the American Arbitration Association. The Standard Form does not make any particular arbitration statute applicable to the arbitration procedure of the American Institute of Architects
 
 
 [2]
 See Monte v. Southern Delaware County Authority, 212 F.Supp. 604, 609-611 (E.D. Pa.1963), reversed on other grounds, 321 F.2d 870, 871-872 (3rd Cir. 1963); Metro Industrial Painting Corp. v. Terminal Construction, 287 F.2d 382, 384 (2d Cir. 1961), certiorari denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24
 
 
 [3]
 The Krauss case was cited with approval by this Court in United States for Use and Benefit of Frank A. Trucco & Sons Co. v. Bregman Const. Corp., 256 F.2d 851, 854 (7th Cir. 1958)
 
 
 [4]
 Sollitt's arguments about multiplicity and circuity of actions are discussed infra
 
 
 [5]
 Cf. Prima Paint Corporation v. Flood & Conklin Mfg. Co., 360 F.2d 315 (2d Cir. 1966), certiorari granted, 385 U.S. 897, 87 S.Ct. 202, 17 L.Ed.2d 130, and Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), certiorari dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37, with Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199
 
 
 [6]
 AlthoughKnolls is a nisi prius case, River Brand Rice Mills v. Latrobe Brewing Co., 305 N.Y. 36, 110 N.E.2d 545, 548 (1953) is consistent therewith.
 
 
 [7]
 See Lummus Company v. Commonwealth Oil Refining Co., 280 F.2d 915, 931, 91 A.L.R.2d 912 (1st Cir. 1960), certiorari denied, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed. 2d 225. Sollitt may decide to bring the Building Trust into the arbitration proceedings, and the plaintiffs may also decide to intervene therein in order to expedite the resolution of this controversy