**BRISTOL FARMERS MARKET AND AUCTION COMPANY and Closeouts, Inc., Appellants,**

v.

**ARLEN REALTY & DEVELOPMENT CORP., Appellee.**

No. 78–1197.

United States Court of Appeals, Third Circuit.

Argued Sept. 6, 1978.

Decided Nov. 20, 1978.

Stephen B. Narin, Madeline Nesse, Narin & Chait, Philadelphia, Pa., for appellants.

Henry A. Stein, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for appellee.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

## OPINION

JAMES HUNTER, III, Circuit Judge:

Bristol Farmers Market and Auction Co. and Closeouts, Inc.[1] (Bristol) appeal from a district court decision refusing to enjoin arbitration demanded under a lease agreement by the lessee, Arlen Realty & Development Corp. (Arlen). The district court held that the issues Arlen seeks to press in arbitration are properly within the scope of the arbitration clause, are not barred by res judicata, and were not waived by Arlen's failure to assert them in prior legal actions. Thus, the district court granted Arlen's motion to dismiss for failure to state a claim upon which relief can be granted. We affirm.[2]

## FACTS

Bristol (as lessor) and Arlen (as lessee) entered into an agreement dated April 2, 1970. It provided for the lease of premises in a shopping center for the operation of a discount department store. The term commenced April, 1970 and was to terminate March 31, 1985. On June 17, 1974 the parties executed an Amendment to the Lease and Consent to Subletting Agreement.

Bristol consented to the subletting of the premises to Bristol Bazaar,[3] but by the terms of the agreement, Arlen remained liable to Bristol for the rental payments.

Litigation commenced between Arlen and Bristol when Arlen and the sublessee, Bristol Bazaar, stopped making rental payments after September 1, 1975.[4] On October 24, 1975 Bristol sued Arlen in federal court for rent due. Bristol received a judgment for rent owing from September 1, 1975 through March 31, 1976 and prevailed in the appeal to this court.[5]

Bristol instituted a second action on June 30, 1976 for rent owing after April 1, 1976. In addition to the rent claim, Bristol contended that Arlen had violated the lease agreement by failing to "stay open" as required by section 102.[6] Arlen requested that the claim be withdrawn from the rent action and submitted instead to arbitration. Bristol consented. Moreover, Arlen specifically refused to raise its "supermarket defense," declaring its intention to press the issue in arbitration. By this "defense," Arlen claims that Bristol had an obligation under the lease to maintain a supermarket in the shopping center. Bristol prevailed in

1. Closeouts, Inc. is the owner of the property leased to Arlen Realty & Development Corp. Closeouts, Inc. had designated Bristol Farmers Market and Auction Co. as the landlord.

2. Federal jurisdiction is based on diversity. 28 U.S.C. § 1332 (1976).

3. Bristol Bazaar was a general partnership. The largest single shareholder of Bristol Farmers Market and Auction Co., Mark M. Woldow, held a 22½% interest in Bristol Bazaar. He was also the largest single shareholder of Closeouts, Inc., and was an officer and director of both Bristol and Closeouts. Robert D. Woldow, President and a director of Closeouts, Inc., also owned a 22½% interest in Bristol Bazaar.

4. Bristol Bazaar terminated its operations in the subleased space on December 28, 1975 and relinquished possession to Arlen on January 9, 1976.

5. *Bristol Farmers Market and Auction Co. v. Arlen Realty & Development Corp.*, No. 75–

2911 (E.D.Pa. June 28, 1976), *aff'd*, 556 F.2d 564 (3d Cir. 1977).

6. Section 102 of the lease provides:

TENANT agrees that no less than 50,000 square feet of the Demised Premises shall be adequately manned, stocked and available for the transaction of business with the public no less than the number of maximum hours which are made available for transaction of business with the public by S. Kleins, Two Guys, Korvette's, Modell's and Mangel's in an area of forty (40) miles from the demised premises in the Commonwealth of Pennsylvania permitted by law, but in no event less hours than the maximum number of business hours utilized by any comparable farmers' market, discount mart or the same or similar type of retail operation as will be conducted by TENANT in the Demised Premises within the aforesaid demised area, if permitted by law, and in no event less than thirty (30) hours each week for business transactions with the public; . . .

the second rent action and in the appeal to this court.[7] The district court declared that the issues were decided in the first rent action and were thus res judicata except the computation of damages.

Bristol brought two additional actions for subsequent rent terms, obtaining a judgment in the district court on the first, which was not appealed, and settling the second before judgment.

On December 9, 1976 Bristol filed a Demand for Arbitration on the issue of whether Arlen breached its obligations by failing to maintain a discount department store in the shopping center. On December 21, 1976 Arlen filed a Demand for Arbitration covering four issues, the last three of which are the subject of this appeal. Subsequently, on January 27, 1977, Arlen filed the same three issues as defense and counterclaim in the arbitration proceeding commenced by Bristol and withdrew its own Demand for Arbitration. Bristol brought this action to enjoin the arbitration of Arlen's counterclaims. The three issues and corresponding claims for relief requested by Arlen in the arbitration proceeding are:

| | |
|---|---|
| [FIRST ISSUE:] | Does the Landlord's failure to maintain a supermarket in the immediately adjacent premises constitute a material breach of the Lease dated April 2, 1970? |
| [CLAIM OR RELIEF SOUGHT:] | Arlen's duty to pay rent to the Landlord is completely relieved by the Landlord's failure to maintain a supermarket operation in premises adjacent to the demised premises. |
| [SECOND ISSUE:] | Does the Landlord's failure to institute or exhaust any remedies against Bristol Bazaar constitute a material breach of the Subletting and Assumption Agreement and other documents executed in connection therewith? |
| [CLAIM OR RELIEF SOUGHT:] | Arlen is relieved of any duty to pay rent to the Landlord by reason of the failure of Landlord to institute and exhaust its remedies against |
| | Bristol Bazaar, which cannot assert any alleged limitation or [sic] liability. |
| [THIRD ISSUE:] | Is Arlen entitled to recover from the Landlord the difference between the rental value of the demised premises with an operating supermarket adjacent thereto and the rental value of the demised premises with a vacant adjacent supermarket? |
| [CLAIM OR RELIEF SOUGHT:] | If Arlen is obligated to pay any rent as damages to the Landlord by reason of the actions in the Federal Court, then Arlen is entitled to an award against the Landlord for each of the months covered in any of the judgments in an amount equal to the difference between the rental value of the demised premises with an operating supermarket and without an operating supermarket adjacent thereto. |

### I.

### A.

We begin with the fundamental assertion that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). *Accord, John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Hussey Metal Division v. Lectromelt Furnace Division,* 471 F.2d 556, 557 (3d Cir. 1972) (decided under Pennsylvania law). Further, the court is limited to ascertaining "whether the party seeking arbitration is making a claim which on its face is governed by the contract. . . . The courts . . . have no business weighing the merits of the grievance." *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). Thus, our role in the first instance is confined to determining whether the issues as-

---

**7.** *Bristol Farmers Market and Auction Co. v. Arlen Realty & Development Corp.,* No. 76– 2104 (E.D.Pa. Dec. 9, 1976), *aff'd,* 566 F.2d 1168 (3d Cir. 1977).

serted by Arlen in arbitration are within the ambit of the arbitration clause.

The arbitration provisions are in sections 2001 and 2002 of the lease:

Section 2001:

If any dispute, difference or issue, except as hereinafter set forth shall at any time be raised with respect to any obligation of the parties under this Lease, such dispute, difference or issue shall be submitted to the American Arbitration Association in Philadelphia, Pennsylvania for arbitration by a board of three arbitrators whose determination and/or award shall be final and binding upon the parties hereto . . . and no award from such arbitration shall be appealable, except in the event of fraud.

Section 2002:

No item of rent or additional rent shall be the subject of arbitration unless previously paid, . . .

Bristol reasons that a resolution of the issues in Arlen's favor will have the ultimate effect of relieving Arlen, either by discharge or setoff, from its rental obligations. Hence, Bristol urges us to regard Arlen's submitted issues as involving "item[s] of rent" specifically excluded from arbitration by section 2002.

We note, however, that the three issues Arlen presses allege independent obligations running from Bristol to Arlen. For the breach of these obligations, Arlen seeks monetary damages or excuse from its obligation to pay rent. Bristol would have us read section 2002 to preclude arbitration any time its lessee claims monetary relief. However, such a reading would cause what appears on its face to be a minor exception for "item[s] of rent" virtually to subsume the general arbitration clause. We cannot believe that this reading of the arbitration provisions was the intention of the parties and we refuse to impose that construction on the contract. Therefore, we hold that the issues submitted for arbitration do not involve "item[s] of rent" and as a result are not precluded from arbitration by section 2002 of the lease.

### B.

Having decided that the terms of the lease do not specifically exclude the issues from arbitration, we must now determine whether they come within the terms of the general arbitration clause. It provides that "any dispute, difference or issue . . . with respect to any obligation of the parties *under this Lease*" shall be submitted to arbitration (emphasis supplied). Bristol contends that the three issues raised by Arlen for arbitration do not arise "under this Lease," hence are not agreed upon subjects of arbitration. As part of our obligation to determine whether the claims are properly referable to arbitration, this court will not order arbitration where "there is no basis for maintaining that the matters . . arise out of or in connection with the agreement." *Necchi v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693, 697 (2d Cir. 1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). Further, this court will not order a "frivolous or patently baseless claim" to arbitration. *National R.R. Passenger Corp. v. Missouri Pac. R.R.,* 501 F.2d 423, 427 (8th Cir. 1974). *Accord, Hamilton Life Ins. Co. v. Republic National Life Ins. Co.,* 408 F.2d 606, 609 (2d Cir. 1969).

Arlen's first and third issues submitted for arbitration relate to its supermarket defense. Bristol argues most strenuously that no clause of the lease requires Bristol to maintain a supermarket in the shopping center. The lack of any explicit requirement plus the integration clause [8] renders, according to Bristol, the supermarket defense a patently frivolous claim which is not subject to arbitration. We cannot agree. *United Steelworkers v. Warrior &*

---

**8.** The integration clause provides:

*Entire Agreement.*

This instrument contains the entire and only agreement between the parties, and no oral statements or representations or prior written matter not contained in this instrument shall have any force or effect. This lease shall not be modified in any way or terminated except by a writing executed by all parties.

*Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) cautions that "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Accord, United Engineering and Foundry Employees v. United Engineering and Foundry Co.,* 389 F.2d 479, 481–2 (3d Cir. 1967).

The lack of an explicit clause requiring Bristol to maintain a supermarket in the shopping center is not fatal to Arlen's attempts to arbitrate issues one and three. Section 1104(a)(1) prohibits Arlen from using the demised premises for a supermarket, food market, grocery store or meat market.[9] By its terms, the clause places no explicit obligations on Bristol; it only prohibits Arlen from certain activities. However, it is susceptible of the interpretation that the parties intended a corresponding obligation on Bristol to maintain a supermarket in the shopping center. The

clause does not merely give Bristol a first option to establish a supermarket; rather, it is absolute in prohibiting Arlen from any food store undertaking. It is the duty of the arbitrator, not the court, to weigh the merits of a claim once the court determines that the claim is within the arbitration clause. *Gavlik Construction Co. v. H. F. Campbell Co.,* 526 F.2d 777, 789 (3d Cir. 1975). We hold that as to the supermarket claims as embodied in Arlen's issues one and three, section 1104(a)(1) is a sufficient basis for determining that they arise under the lease agreement.[10]

Arlen's second issue which Bristol seeks to enjoin from arbitration asserts that Bristol committed a material breach of the lease by failing to exhaust its remedies against the sublessee, Bristol Bazaar, before proceeding against Arlen. On June 17, 1974 Bristol and Arlen executed an Amendment to Lease and Consent to Subletting Agreement. Section 3 directs that Bristol receive rental payments directly from Bristol Bazaar but retain its rights against Arlen.[11] We cannot say with "positive assur-

---

9. Section 1104(a)(1) of the lease provides:
   *Restrictions on TENANT.*
   (a) TENANT agrees with LANDLORD for the benefit of LANDLORD and other occupants of the premises of which the Demised Premises are a part that TENANT, its successors and assigns, sub-tenants, or concessionaires, or those holding by, through or under them, may not use the Demised Premises for the following:
   (1) Supermarket, food market, grocery store, meat market, or (except as hereinafter expressly permitted) for the storage thereof (in connection with retail sales), for the offering for sale or for the sale of any foods, food stuffs, *groceries, meats, provisions, fruits,* produce, vegetables, seafoods, dairy or delicatessen products.

10. Judge Garth, in dissent, would apparently not submit a claim to arbitration unless the lease contained an *express* clause imposing an obligation on one of the parties. We fully agree that under the arbitration clause, we cannot refer a dispute to arbitration unless it relates to "any obligation of the parties under this Lease." However, we see no reason to believe, as the dissent apparently does, that the parties intended to exclude *implied* obligations from arbitration. Arlen's claim is that the agreement, properly construed, implies an obligation on Bristol to maintain a supermarket.

By going beyond a determination of whether the claim relates to an obligation under the lease and deciding that no such obligation in fact exists, the dissent has moved to the merits of the dispute, thereby exceeding our function in this case.

The dissent states that a hypothetical dispute over whether a "convenience store" is a "supermarket" under section 1104(a)(1) is different from the case before us and would clearly be *referable to* arbitration. We fail *to* see the distinction. The difference on which Judge Garth focuses is between the hypothetical and this case is that the lease contains an express prohibition against "supermarket" undertakings by Arlen. But in both the hypothetical and in our case, the issue is whether the express language implies additional obligations. Though the language does not in terms compel Bristol to maintain a supermarket, neither does it address whether a "convenience store" is a "supermarket." In both situations, it would be for the arbitrator to interpret the contract and make the merits decision.

11. Section 3 of the Amendment to Lease and Consent to Subletting Agreement provides:
   Landlord and Owner shall accept rental payments and performance of Tenant's obligations under the Lease directly from the Sublessee, it being understood however, that

ance" that the arbitration clause does not cover this dispute. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Section 3 addresses the issue of payment among the three parties to the agreement, but does not state whether Bristol must proceed initially against Bristol Bazaar for the rent due. Since the dispute in Arlen's second issue submitted for arbitration arises under the lease, we hold that it presents a case for resolution on the merits by the arbitrator.

## II.

■ Bristol also contends that the issues raised by Arlen are barred from arbitration by res judicata. Bristol had instituted three prior rent actions against Arlen and obtained judgments in each. In this suit, Bristol asserts that a necessary predicate to the district court's holdings in the rental cases was that Bristol had complied in all respects with the terms of the lease. Thus, Bristol claims that Arlen's issues alleging breaches of the lease were determined by the district court in the prior rent actions.

Bristol cites *Clemens v. Central R.R.,* 399 F.2d 825 (3d Cir. 1968), *cert. denied,* 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969), as controlling. There, involuntarily retired railroad employees sought a mandatory injunction requiring the railroad to arbitrate whether the employees were entitled to severance pay. A prior case between the same parties had held that they were not. This court ruled that the prior judgment was res judicata between the par-

ties and could not be raised in arbitration. Bristol also cites *Galt v. Libbey-Owens-Ford Glass Co.,* 376 F.2d 711, 715 (7th Cir. 1967), in which the court noted in dicta that a judgment in a legal proceeding would be res judicata in any subsequent arbitration.

Neither case is helpful to Bristol. The three prior rent actions only decided that rent was due and owing to Bristol. The supermarket defense and the duty of Bristol to exhaust its remedies against Bristol Bazaar before proceeding against Arlen were not before the court.[12] Since the issues Arlen seeks to assert in arbitration have not been previously decided in a judicial action, *Clemons* and *Galt* are not authority for Bristol's claim that the issues are barred from arbitration by the doctrine of res judicata.

■ Bristol also contends that the issues Arlen seeks to assert in arbitration are compulsory counterclaims under Rule 13 of the Federal Rules of Civil Procedure. The district court felt that the issues would have been compulsory counterclaims; Arlen does not appear to contest that assertion. A compulsory counterclaim not raised in the first action is barred in subsequent litigation. *Southern Construction Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962);· *Cleckner v. Republic Van and Storage Co.,* 556 F.2d 766, 769 n.3 (5th Cir. 1977). It does not follow, however, that the claim is also barred from consideration in subsequent *arbitration* proceedings.

The strong public policy in favor of arbitration supports this conclusion.[13] In *Local*

the acceptance of said payment and performance by Landlord and Owner or the execution of this instrument shall not be construed or intended as a waiver of Tenant's liability to Landlord and Owner, or a release of Tenant from its obligations under the Lease, except to the extent such payment or performance have been made by Sublessee.

12. At the second proceeding, Arlen reserved the supermarket defense stating that it intended to raise the issue in arbitration. In its opinion in this suit below, the district court, which had also tried the earlier rental actions, noted:

In the second rent suit, we did not consider the arbitrability of the claims Arlen raises

here, nor did we consider the extent to which an arbitration panel would be bound by Arlen's failure to raise those claims at trial. We ruled only that Arlen did not have the right to arbitrate such claims *prior* to the rent action, especially in view of the tardiness of Arlen's motion to stay. (App. at 129a)

This court affirmed Bristol's appeal of the second rent action on November 29, 1977 without opinion. *Bristol Farmers Market and Auction Co. v. Arlen Realty & Development Corp.,* 566 F.2d 1168 (3d Cir. 1977).

13. *See, e. g., Seaboard Coast Line R.R. v. National R.R. Passenger Corp.,* 554 F.2d 657 (5th Cir. 1977); *Hanes Corp. v. Millard,* 174 U.S. App.D.C. 253, 531 F.2d 585 (1976); *Gavlik Con-*

*11, IBEW v. G. P. Thompson Electric, Inc.,* 363 F.2d 181 (9th Cir. 1966), the union filed grievances for arbitration which the employer asserted were compulsory counterclaims to a pending legal action. The employer claimed that the union had lost the right to arbitrate the grievances by failing to raise them in the judicial action. The Ninth Circuit held that the issues, though compulsory counterclaims under Rule 13, were not barred in the arbitration proceeding: "If one of the disputing parties could, by filing a complaint alleging a grievance outside the scope of the agreement for arbitration, force his opponent to by-pass arbitration and assert counterclaims as to controversies otherwise arbitrable, the desired intent and purpose of arbitration agreements could be effectively frustrated." *Id.* at 185. *Cf. California Trucking Association v. Corcoran,* 74 F.R.D. 534, 545–6 (N.D. Cal.1977) (employer should not be allowed to circumvent arbitration of issues which the employer has agreed to arbitrate by the mere filing of a suit). Though *Thompson* involved arbitration under a collective bargaining agreement, its reasoning is equally applicable here.

Moreover, the policy behind compelling the defendant to raise his compulsory counterclaim or have it barred from subsequent litigation is "to enable the court to settle all related claims in one action, thereby avoiding a wasteful multiplicity of litigation on claims arising from a single transaction or occurrence." 6 C. Wright & A. Miller, Federal Practice and Procedure § 1409, at 37 (1971). Where the claim which would be barred if raised in a judicial action is instead pressed as a basis for arbi-

tration, the goal of avoiding multiple litigation is still achieved.[14] In fact, judicial economy will be enhanced since court time need not be expended in proving the counterclaim. Thus, we hold that neither the doctrine of res judicata nor the rules of compulsory counterclaims prevents the arbitration of the issues pressed by Arlen.

### III.

Arbitration of the three issues submitted by Arlen will not be enjoined. They arise under the lease as contemplated by the arbitration clause and are not precluded by the specific exclusion for "item[s] of rent." Further, the issues are not barred from arbitration by res judicata and related doctrines. The decision of the district court will be affirmed.

GARTH, Circuit Judge, dissenting:

I agree with the conclusions reached by the majority in all respects save one. In Part B. of its opinion, the majority holds that the First and Third issues as to which Arlen has demanded arbitration (*see* Maj. Op. at 1218) are arbitrable matters under section 2001 of the lease (the arbitration provision). In so holding, the majority, in my opinion, has strained the arbitration cause far beyond the contemplation and agreement of the parties to the lease.

Issues One and Three involve what has come to be known as "the supermarket defense." Arlen contends that Bristol, as landlord, was obligated under the lease to maintain a supermarket on premises adjacent to Arlen's, and that its failure to do so constituted a material breach of the lease.[1]

---

*struction Co. v. H. F. Campbell Co.,* 526 F.2d 777 (3d Cir. 1975).

**14.** Any multiplicity here has been created by Bristol, not by Arlen. Arlen has, from the beginning, sought to have all issues resolved by arbitration. The language of *Galt v. Libbey-Owens-Ford Glass Co.,* 376 F.2d 711, 716 (7th Cir. 1967) is instructive:

> Even if it were proper . . . to enjoin arbitration to prevent multiplicity, this is not an appropriate case to do so. Here [the defendant] is not pressing its claim against [the party seeking to enjoin arbitration] in more

than one forum. [The defendant] has steadfastly sought to arbitrate its claim . . . and is not responsible for the multiplicity or circuity problems asserted by [the party seeking to enjoin arbitration].

**1.** Arlen claims that Bristol's failure to maintain a supermarket on adjacent premises relieved it of its duty to pay rent and, in addition or in the alternative, entitled it to damages in the amount of the difference in the value of its leasehold with and without a supermarket operating in adjacent premises. For further de-

Under the terms of the arbitration clause (*see* Maj. Op. at 1218), this matter is arbitrable if it concerns

> any dispute, difference or issue, . . . with respect to any obligation of the parties under this Lease, . . .

Hence, only if the issue involves an *obligation* of a party under this lease may the arbitrator's jurisdiction be invoked.

The majority acknowledges that nowhere in the lease is there any express requirement or obligation that Bristol maintain a supermarket in the shopping center.[2] It notes, however, that section 1104(a)(1) of the lease (*see* Maj. Op. at 1218–1219 n.9) prohibits the tenant, Arlen, from using its premises for the operation of a supermarket. Although the majority recognizes that this provision of the lease, "by its terms," relates solely to the *obligations of Arlen* as the tenant as distinct from any *obligations of Bristol* as the landlord,[3] it nonetheless concludes that section 1104(a)(1) "is susceptible of the interpretation that the parties intended a corresponding obligation on Bristol to maintain a supermarket."[4] I cannot agree with this analysis, because it is the court's responsibility to determine "whether the party seeking arbitration is making a claim which on its face is one governed by the agreement."[5]

Whether a controversy is arbitrable is a question which the court must determine "on the basis of the contract entered into by the parties."[6] In cases analogous to the present one, this Court and the Court of Appeals for the Second Circuit have held that the courts must decide whether each issue submitted to arbitration is within the terms of the arbitration clause. In *International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Association*, 574 F.2d 783 (3d Cir. 1978), the contract between the parties limited the jurisdiction of a labor-management committee to disputes involving "inadvertent or bona fide errors." This Court held that whether such errors had occurred was a threshold issue for judicial determination. The Court then interpreted the contractual term "errors" to exclude from arbitration all claims based on economic impracticality or on longstanding industry practice, and therefore held that the dispute was *not* arbitrable. The Court's conclusion that it must determine in each case whether the contractual predicate for arbitration has been satisfied is apposite to the present case:[7]

> Since the jurisdiction of the arbitrator is contractually granted by the parties, the question as to whether a particular

---

lineation of issues One and Three, *see* Maj. Op. at 1217.

2. Maj. Op. at 1219.

3. *Id.* at 1219–1220.

4. *Id.* at 1219.

5. *International Telephone & Telegraph Corp. v. Local 400, Int'l. Union of Elec. Workers*, 286 F.2d 329, 330–31 (3d Cir. 1961). *See also Butler Prods. Co. v. Unistrut Corp.*, 367 F.2d 733, 735 (7th Cir. 1966).

6. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962); *see also Int'l. Bhd. of Teamsters, Local 249 v. W. Pa. Motor Carriers Ass'n*, 574 F.2d 783, 787 (3d Cir. 1978).

7. *Id.* The Court relied in part on *Bieski v. Eastern Automobile Forwarding Co.*, 396 F.2d 32 (3d Cir. 1968). That case was described in *Teamsters* as involving

> "a dispute concerning the seniority to be granted transferred employees when one carrier purchased the real estate and operating equipment of another. The labor contract in that case conferred authority on a Joint Committee to decide the controversy '[in] the event that the Employer absorb[ed] the business of another . . . carrier.' 396 F.2d at 34. The Joint Committee's jurisdiction, therefore, hinged on whether there had been such an 'absorption' of business. On review this court did not defer to the Committee's determination, but rather subjected the committee's jurisdictional decision to 'full, broad review.' *Id.* at 38. *See Humphrey v. Moore*, 375 U.S. 335, 345 n.8, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964)."

574 F.2d at 788 (footnotes omitted). Both *Bieski* and *Teamsters* involved judicial review of decisions by labor-management committees. However, this Court in *Teamsters* treated the issue of the committee's jurisdiction as no different from a determination of arbitrability in a suit to compel or to enjoin an arbitration. 574 F.2d at 786–87.

dispute is arbitrable necessarily depends on "whether the parties agreed to submit the dispute to arbitration." *Ludwig Honold Manufacturing Co. v. Fletcher*, [405 F.2d 1123], *supra*, 405 F.2d at 1125 n.2. *See Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Thus a reviewing court must in the first instance examine the jurisdictional predicate (*i. e.*, the contract provision) which purports to require the submission of a dispute to arbitration. The court does so to ascertain whether the parties intended that the controversy be included within the scope of the arbitration clause.

The Court of Appeals for the Second Circuit has adopted a similar view in *Necchi S.p.A. v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693 (2d Cir. 1965), *cert. denied*, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966), a case on which the majority has relied in its opinion. In that case, the court acknowledged that " 'the federal policy' " is to " 'construe liberally arbitration clauses.' " [8] Notwithstanding this policy, the court held that claims which "[were] not founded on any provision of the . . . agreement" were not arbitrable.[9] The distributorship agreement in *Necchi* provided for arbitration of "matters, disputes or disagreements arising out of or in connection with" the agreement between the parties. The distributor demanded arbitration of its claims that Necchi had failed to meet various obligations under their contract. The court in an opinion by Judge (now Justice) Marshall held that claims which were not founded upon express provisions of the contract were not arbitrable. The Court concluded that

> It is undoubtedly true that many of the matters referred to in items 1, 2, 3, 6, 7 and 9 [the claims held not to be arbitrable] would not have arisen if the exclusive distributorship arrangement had

never existed between the Sales Corp. and Necchi. But this is not sufficient to render them arbitrable within the specific meaning of the arbitration clause of the 1961 agreement, which requires that the matter arise out of or in connection with that argeement [sic] rather than the working relationship between the parties.[10]

In applying the principles set out in *Teamsters* and *Necchi* to the present case, the starting point for our analysis must be the terms of the arbitration compact. Section 2001 of the lease triggers arbitration "if any dispute, difference or issue . . . shall at any time be raised with respect to any obligation of the parties under this Lease . . . ." Under *Teamsters* then, the threshold question which this Court must determine is whether the lease could reasonably be construed by the arbitrator to impose on Bristol the "obligation" to maintain a supermarket in the shopping center. The majority opinion, as it must, relies completely on section 1104(a)(1) of the lease in deciding this question in favor of Arlen. The majority acknowledges that, on its face, this provision creates obligations only for the Tenant, Arlen. Significantly, it also acknowledges that "[b]y its terms, . . . [it] places no explicit obligations on Bristol." [11] Indeed, section 1104(a)(1) is entitled "Restrictions on Tenant" and makes no reference whatsoever to the duties of the landlord. Nonetheless, the majority concludes that the arbitrator could infer from the restriction on the tenant that the landlord had promised to maintain a supermarket.

This conclusion may result, in part, from a misapprehension of the terms of the arbitration agreement. On three occasions (*see* Maj. Op. at 1219, 1220, 1221), the majority concludes that an issue is arbitrable under section 2001 if it *arises under* the lease agreement." (Emphasis supplied). How-

---

8.   *Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.*, 348 F.2d 693, 697 (2d Cir. 1965), *quoting, Metro Industrial Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382, 385 (2d Cir.), *cert. denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961).

9.   348 F.2d at 698.

10.   *Id.*

11.   Maj. Op. at 1219.

ever, section 2001 was drawn more narrowly than the majority implies. It does not provide for arbitration of all disputes "arising under" or "in connection with" the lease. It confines arbitration to those disputes which concern an "obligation . . under this Lease." If the intentions of the parties to this agreement are to be honored, this Court must scrutinize Arlen's claim to determine whether it is founded upon an obligation of Bristol under the lease. This the majority has not done.

To me, it is evident that, no matter how the lease is construed, a restriction on Arlen cannot create an obligation for Bristol. I observe that Article XXV (*see* Maj. Op. at 1218 n.8) limits the obligations of the parties to those which have been set out in the writing. Because section 1104(a)(1) is limited "by its terms" to the obligations of the Tenant, any "corresponding obligation on the landlord" would necessarily be based on an oral understanding external to the written instrument. However, Article XXV expressly negates the effect of any such "oral statement or representation." Hence, section 1104(a)(1) read together with Article XXV cannot support arbitral jurisdiction in this case.

The majority suggests, however, that section 1104(a)(1) should be interpreted by the arbitrator and not by this Court. I am in accord with this conclusion. But we are not dealing here with mere interpretation of a substantive provision of a contract as, for instance, we would be if the issue were whether a small convenience store constituted a "supermarket" within the meaning of section 1104(a)(1). By contrast, the dispute between Bristol and Arlen concerns the existence of an obligation to maintain a supermarket, and the arbitration clause requires us to determine whether Arlen's claim is founded on any obligation of the landlord under the lease. *International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Association*, 574 F.2d 783 (3d Cir. 1978). To my mind, our task has been rendered relatively simple by the parties. We can look only to what the parties have agreed to in the lease. We cannot look beyond the confines of the lease, because Article XXV precludes us from doing so. Looking only to the written instrument, it is impossible for any interpretation to be derived which would impose an obligation—express or implied—on Bristol to maintain a supermarket. This being so, it follows that the supermarket defense is not arbitrable.

I am mindful that if my views were to prevail, this dispute would necessarily be fragmented into judicial and arbitral fora. However, the Supreme Court has resolved that the policy favoring liberal construction of arbitration agreements does not extend to requiring a party "to submit to arbitration any dispute which he has not agreed so to submit." [12] Accordingly, it is clear to me that where a party has agreed only to arbitrate disputes concerning obligations under the lease, and where his obligations are expressly limited to those set forth in the writing, he may not be required to arbitrate a claim which is predicated on an obligation which does not appear in the lease. In these circumstances, the arbitrator is without jurisdiction to resolve the dispute.

I would therefore reverse so much of the district court's order as refuses to enjoin arbitration of Arlen's "supermarket defense," and I would remand for further proceedings before the district court.

---

12. *USW v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).