**In Re Burnis Chilton BELCHER, and Lois Kathryn Belcher, Debtors.**

**C.I.T. FINANCIAL SERVICES, INC., Plaintiff,**

**v.**

**Burnis Chilton BELCHER, and Lois Kathryn Belcher, Defendants.**

**Bankruptcy No. 81–00890–C. Adv. No. 81–0933–C.**

United States Bankruptcy Court, W. D. Missouri, C. D.

Aug. 26, 1981.

R. L. Veit, Jefferson City, Mo., for debtors/defendants.

Victor Tell Neff, Jefferson City, Mo., for plaintiff.

## ORDER DENYING MOTION TO DISMISS

FRANK P. BARKER, Jr., Chief Judge.

On May 18, 1981 plaintiff filed this complaint to determine the dischargeability of a debt, alleging that defendants obtained money and a renewal or refinancing of credit by the use of a statement in writing which was materially false, a violation of 11 U.S.C. § 523(a)(2)(B).

On June 1, 1981 defendants timely moved to dismiss the complaint, affirmatively stating that this action was barred by plaintiff's failure to raise the issue of dischargeability in adversary case No. 81–0580–C. In that case the debtors had filed their complaint styled *Burnis Chilton Belcher and Lois Kathryn Belcher v. C.I.T. Financial Services, Inc.* to avoid a lien on their household goods under 11 U.S.C. § 522(f).

Service was proper in the lien avoidance case. C.I.T. Financial Services, Inc. (hereafter C.I.T.) failed to answer. C.I.T. also failed to appear at the hearing on the matter April 17, 1981. This Court, on May 7, 1981 issued its Order Avoiding the nonpossessory, nonpurchase-money security interest of C.I.T. in household goods.

The issue presented is whether C.I.T. is barred from bringing this dischargeability complaint because it failed to file a counterclaim in the first adversary proceeding instigated by the debtors to avoid the lien.

Rule 713 of the Rules of Bankruptcy Procedure makes Rule 13 of the Federal Rules of Civil Procedure applicable to adversary proceedings. It states:

Rule 13 of the Federal Rules of Civil Procedure applies in adversary proceedings, except that (1) subdivision (f) does not apply, (2) a party sued by a trustee or receiver need not state as a counterclaim any claim which he has against the bankrupt, his property, or the estate, (3) when a trustee or receiver fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, he may by leave of court set up the omitted counterclaim by amendment or by commencing a new adversary proceeding or separate action, and (4) persons other than the original parties to the adversary proceeding may be made parties to a counterclaim or cross-claim in accordance with Rules 719 and 720.

■ Rule 13 of the Federal Rules of Civil Procedure has generally been held applicable in bankruptcy cases. *Harris v. Capehart-Farnsworth Corp.,* 225 F.2d 268, 270 (8th Cir. 1955).

Federal Rules of Civil Procedure, Rule 13, provides in pertinent part at section (a):

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

As stated in Rule 713 of the Rules of Bankruptcy Procedure, section (f) does not apply. Section (f) reads:

(f) Omitted Counterclaim. When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment.

It thus appears that the Federal Bankruptcy Rule 713 is more restrictive than Federal Civil Procedure Rule 13.

■ The purpose of Rule 13 with respect to counterclaims is to provide complete relief to the parties; prevent fragmentation of litigation and multiplicity of actions; and to conserve judicial resources. *Southern Const. Co. v. U.S. for Use of Pickard*, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); *U. S. General, Inc. v. City of Joliet*, 598 F.2d 1050 (7th Cir. 1979); *Bristol Farmers Market and Auction Co. v. Arlen Realty & Development Corp.*, 589 F.2d 1214 (3rd Cir. 1978); and *Montecatini Edison, S.P.A. v. Ziegler*, 486 F.2d 1279 (D.C.Cir.1973).

The provision of Rule 13 relating to compulsory counterclaims should be given a broad, realistic interpretation to avoid a multiplicity of suits. *Sue & Sam Mfg. Co. v. B–L–S Const. Co.*, 538 F.2d 1048 (4th Cir. 1976).

The courts have generally agreed that what constitutes a "transaction or occurrence" should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a) *6 Wright & Miller, Federal Practice and Procedure*, § 1410 at page 40. See also *Warshawsky & Co. v. Arcata Nat. Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977); *Columbia Plaza Corp. v. Security Nat. Bank*, 525 F.2d 620 (D.C.Cir.1975); *Annis v. Dewey County Bank*, 335 F.Supp. 133, 138 (D.C.S.D.1971).

■ The recent 8th Circuit case of *Cochrane v. Iowa Beef Processors*, 596 F.2d 254, 264 (8th Cir. 1979); cert. denied 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); see also *Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1136 (8th Cir. 1981), set forth the following tests for determining whether the claim in question arose out of the same transaction or occurrence, within the meaning of Rule 13(a) as set forth in *6 Wright & Miller, Federal Practice and Procedure*, § 1410 at page 42. The tests are as follows:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

4) Is there any logical relation between the claim and the counterclaim? (Footnotes omitted).

In the case of each of these tests, an affirmative answer to the question posed means that the counterclaim is compulsory.

■ This Court finds that the dischargeability claim was not a compulsory counterclaim in the lien avoidance proceeding under any of the aforementioned tests.

The "transaction or occurrence" giving rise to the dischargeability complaint centers around the execution of a false financial statement by the debtors whereas the "transaction or occurrence" surrounding a lien avoidance proceeding centers upon the execution of a non-possessory, non-purchase money security agreement.

While the underlying note, security agreement and statement of financial condition may have been completed at the same time, the statement of financial condition would be completely irrelevant in a lien avoidance proceeding.

The issue at bar in a lien avoidance proceeding is whether the lien itself was a non-possessory, non-purchase money security interest in household goods. The issue at bar in this type of dischargeability complaint is whether the debtors are entitled to a discharge of the debt in light of their nondisclosure to the plaintiff of pre-existing debts.

Thus, the issues of fact and law raised by the claim and counterclaim would not be largely the same. Nor would substantially the same evidence support or refute both claims.

Nor would res judicata bar the dischargeability issue since the subject matter of the lien avoidance is not identical to the dischargeability issue. Thus, the conclusiveness of lien avoidance determination would have no bearing on the dischargeability issue.

Under the final test the question is whether the claims arise out of the same aggregate of operative facts that are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit.

However, it should be noted, that the division of counterclaims into those that are compulsory and those that are permissive represents an accommodation between two competing policies—the desire to adjudicate all the disputes between the parties in one action and the need to prevent lawsuits from becoming unduly complicated.

This Court feels the claims of the parties are not inextricably intertwined to a degree that they should be considered compulsory counterclaims. Further, a decision finding such a claim compulsory would have a grave effect on the procedural scheme of the Bankruptcy Code itself.

In the case at bar, the "Order for Relief" was entered March 20, 1981. Defendants' complaint to avoid plaintiff's lien was filed March 25, 1981. The complaint was heard April 17, 1981. Pursuant to Rule 409(a)(2), the "Order for Meeting of Creditors/Fixing Time for Filing Complaints Objecting to Discharge or the Dischargeability of Debts/..." filed March 31, 1981 gave the creditors until May 30, 1981 to file complaints to determine the dischargeability of debts. The first meeting of creditors was held April 30, 1981 and the dischargeability complaint was filed May 18, 1981.

Rule 409(a)(2), requires the Court to make an order fixing a time for filing complaints to determine dischargeability of debts, which time "shall be not less than 30 days nor more than 90 days *after* the first date set for the first meeting of creditors."

In addition to the purpose of the orderly administration of a bankruptcy case, this rule has a more specific purpose. That purpose is to allow a first meeting to be held to inquire of the debtor's "... acts, conduct or property..., or to any matter which may effect ... his right to discharge," Rule 205(d), and therefore discover if the debtor's conduct warrants the filing of an objection to discharge or dischargeability. Without this period of discovery,

creditors' rights would be severely impaired. These specially designed procedures do not, in this Court's opinion, warrant deferment to considerations of procedural economy and expedition of administration.

No cases have been found where this issue has been litigated. However, the case of *Matter of Racing Wheels, Inc.*, 5 B.R. 309, (Bkrtcy.M.D.Fla.1980) is of some utility. In a business reorganization case, the debtor's landlord filed a complaint for relief from the automatic stay in order to regain possession of the leased premises. In due course, the debtor filed its answer in which it generally denied all allegations. The answer did not contain any affirmative defenses nor did the debtor file a counterclaim. At the beginning of the trial, debtor orally moved to amend its answer and file a counterclaim for damages. Both motions were denied.

The court stated at page 312:

"In addition, it is well settled that a complaint which seeks a relief from the automatic stay is not really a complaint in the orthodox sense which invokes the rule governing either compulsory or permissive counterclaims. F.R.Civ.P. Rule 13, Bankruptcy Rule 713. This is so because a complaint which seeks a relief from the automatic stay is merely a procedural necessity imposed on third parties who must seek relief from the automatic stay for the purpose of proceeding on the merits in a non-bankruptcy forum. Such a complaint does not constitute a claim within the meaning of Rules 12(b) or 13, F.R.Civ.P. and affirmative defenses and counterclaims can be properly heard only at a trial on the merits. *In re Essex Properties, Ltd.*, 3 B.C.D. 331 (N.D.Cal. 1977). This was true, without doubt, under the pre-Code law and there is nothing in the Code itself or in the relevant legislative history which would require a different conclusion."

Many would also argue that a lien avoidance proceeding is not or should not be a complaint in the orthodox sense.

The debtors argue that a fragmentation of lawsuits burdens them in that "... it

requires all debtors to make another court appearance to defend lawsuits in two separate trials versus one . . . , and incur further attorney's fees . . ."

This argument carrys little weight with this Court. The debtors are prosecuting and not defending the lien avoidance proceeding. It is to their benefit to take advantage of § 522(f). Moreover, when a lien avoidance is uncontested, as here, only the debtors' attorney is required to attend the default hearing. Appearance by the debtors is not necessary. Finally, debtors' attorneys are not permitted additional fees to handle routine lien avoidance proceedings—this service is included with the fee charged for filing the petition, appearances at first meetings, discharge hearings and other routine hearings. It is

ORDERED, that defendants' motion to dismiss is hereby denied.